IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| THOMAS & BETTS<br>POWER SOLUTIONS, L.L.C.,<br><br>Plaintiff,<br><br>v.<br><br>POWER DISTRIBUTION, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)   Case No. 3:07cv167-HEH<br>)<br>)<br>)<br>) |

**T&BPS' MEMORANDUM OF ATTORNEYS' FEES AND COSTS
PURSUANT TO THE COURT'S ORDER OF FEBRUARY 8, 2008**

Plaintiff Thomas & Betts Power Solutions, L.L.C. ("T&BPS"), by counsel, submits its Memorandum of Attorneys' Fees and Costs Pursuant to the Court's Order of February 8.

**INTRODUCTION**

By Memorandum Opinion [Docket No. 100] and Order [Docket No. 101] dated February 8, 2008, the Court granted T&BPS' motion to declare this case exceptional under 35 U.S.C. § 285 and directed T&BPS to provide a memorandum detailing its request for attorneys' fees and costs.

"The purpose of Section 285 is to reimburse a *party* injured when forced to undergo an 'exceptional' case." *Mathis v. Spears*, 857 F.2d 749, 753 (Fed. Cir. 1988) (emphasis in original). "The only protection that parties in [T&BPS'] position have against abusive and frivolous litigation – and the only protection this Court has against such suits – is an award of counsel fees to the unjustly accused infringer." *Abraskin v. Entrecap Corp.*, 55 F. Supp. 2d 224, 229 (S.D. N.Y. 1999). As this Court explained in *Synthon IP, Inc. v. Pfizer Inc.*, "'it would be *grossly*

*unjust* [for defendant to] … be left to bear the burden of its own counsel'" in a case deemed exceptional under 35 U.S.C. § 285. *Synthon IP, Inc. v. Pfizer Inc.*, 484 F. Supp. 2d 437, 443 (E.D. Va. 2007) (quoting *J.P. Stevens Co., Inc. v. Lex Tex Ltd., Inc.*, 822 F.2d 1047, 1052 (Fed. Cir. 1987) (emphasis in original)). Likewise, for the reasons set forth in the Court's Memorandum Opinion of February 8, 2008, it would be unjust for T&BPS to be left to bear the burden of the attorneys' fees, costs and expert witness fees that T&BPS was forced to incur after August 13, 2007.

## ARGUMENT

T&BPS is seeking to recover the attorneys' fees and non-taxable costs it reasonable and necessarily had to incur after August 13, 2007 because of PDI's misconduct in this litigation. As explained herein, T&BPS asks the Court to award it $188,067.75 in attorneys' fees and $11,350.65 in non-taxable costs, or a total of $199,418.40, that T&BPS incurred between August 13, 2007 and January 24, 2007. This request not only excludes the attorneys' fees and costs incurred prior to August 13, 2007 (which exceed the amount requested herein), it also excludes the significant amount T&BPS incurred on its expert witness and over $37,00.00 in attorneys' fees that T&BPS voluntarily deducted as unnecessary or potentially redundant. Hence, T&BPS' requested attorneys' fees and costs are substantially less than those actually incurred by T&BPS as a result of this litigation.

As explained further below, T&BPS requests that the Court enter an award against PDI of $199,418.40 for the reasonable attorneys' fees and costs T&BPS was forced to incur between August 13, 2007 and January 24, 2007, plus post-judgment interest thereon.

**I.    T&BPS IS ENTITLED TO ITS REASONABLE ATTORNEYS' FEES UNDER THE JOHNSON FACTORS**

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). This figure is often referred to as the lodestar amount. *See Daly v. Hill,* 790 F.2d 1071, 1076 n.2 (4th Cir. 1986). The party seeking attorneys' fees bears the burden of "establish[ing] the reasonableness of a requested rate." *Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir. 1990). "Where, as here, a prevailing party 'has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation.'" *Mathis,* 857 F.2d at 755 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983)); *see also Brasseler, USA I, LLP v. Stryker Sales Corp.,* 267 F.3d 1370, 1386 (Fed. Cir. 2001) (rejecting argument that fees should be awarded only for presentation of certain defense because defendant "would not have incurred any of the fees generated in defense of this suit had [patentee] not committed inequitable conduct in pursuit of its patent and had it not filed a claim for infringement of that patent, known by [patentee] to have been improperly obtained.").

In determining the reasonableness of the rates and the hours, courts consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974). *See Daly,* 790 F.2d at 1076. These factors are:

> (1) [t]he time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fees; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and

      length of the professional relationship with the client; and
      (12) awards in similar cases.

*Superior Form Builders v. Dan Chase Taxidermy Supply Co., Inc.*, 881 F. Supp. 1021, 1025 (E.D. Va. 1994) (citing *Daly*, 790 F.2d at 1076 n.2).[1] Factors 1, 3, 5, 7-9 and 12 of the *Johnson* factors are relevant to this case. As explained below, each of these factors clearly supports T&BPS' application.

    **A.**    **Time and Labor Required (Johnson Factor #1)**

The time expended by T&BPS' counsel was reasonable considering the subject matter of this litigation, the tasks that needed to be performed, and the litigation tactics employed by PDI. After the Court issued a construction of the term "circuit board" that foreclosed PDI's infringement claim, T&BPS sought agreement from PDI to dismiss its infringement claims and pursue an appeal of the Court's claim construction. After PDI refused this offer, T&BPS sought to bring the case to a swift conclusion by filing a Motion for Summary Judgment on August 28, 2007 [Docket No. 34]. PDI responded to T&BPS' motion by moving for an extension of time to respond to the motion [Docket No. 36] and filing a Motion for Discovery under Rule 56(f) [Docket No. 36]. Two months later, PDI later filed its own Motion for Partial Summary Judgment of Infringement [Docket No. 60]. PDI's tactics had the effect of delaying the Court's consideration of T&BPS' summary judgment motion until November 13, when the last brief on summary judgment was filed. *See* PDI's Reply in Support of Motion for Summary Judgment of

---

[1] The determination of both the reasonable hourly rate and the reasonable number of hours expended is made on an individual basis for each person billing hours to the client. The reasonable hourly charges for employees such as law clerks and paralegals are properly included as part of the attorney's fees award if it is the practice of the attorney and the community to bill the client for such work on an hourly basis. *See Missouri v. Jenkins,* 491 U.S. 274, 288 (1989). If the lodestar figure is either unreasonably low or unreasonably high, the court may adjust the fee as necessary within the guidelines of the *Johnson* factors. *Blum v. Stenson,* 465 U.S. 886, 897 (1984).

Infringement [Docket No. 74]. Once the summary judgment motions were ripe for decision, the Court ruled promptly, granting T&BPS' motion for summary judgment and denying PDI's motion on November 15. *See* Memorandum and Opinion [Docket No. 75] and Order [Docket No. 76].

The discovery cut-off in this case was set for December 7, 2007. Thus, between August 28, when T&BPS filed its summary judgment motion, and November 15, when that motion was granted, it was necessary for T&BPS to conduct discovery and prepare as if the case were going to trial. In the time period while its summary judgment motion was pending, T&BPS had to prepare claim charts, propound discovery, take the deposition of PDI's corporate representative, produce an expert report, respond to interrogatories, requests for admission and document requests from PDI and defend the deposition of its corporate representative. All of these efforts were complete by the time the Court granted summary judgment on November 15. The only discovery that took place after November 15 was the deposition of the inventor, which T&BPS has not included in its fee request.

In addition to conducting discovery, it was necessary for T&BPS to respond to PDI's motion listed above, as well as several other motions filed by PDI [Docket Nos. 39, 56 and 57] and to file a motion to require PDI to designate an appropriate corporate representative under Fed. R. Civ. P. 30(b)(6) [Docket No. 41]. Even after the Court granted summary judgment, T&BPS had to respond to PDI's Motion for Reconsideration [Docket No. 78] and Motion to Dismiss for Lack of Jurisdiction {Docket No. 81].

T&BPS' fee application seeks only the fees and costs it had to incur to litigate this case until it could obtain judgment on PDI's infringement claims, to respond to PDI's motions filed after the Court granted summary judgment and to prosecute its motion under Section 285. In

total, T&BPS' lawyers spent approximately 574 hours on matters for which it seeks reimbursement in just over five months from August 15, 2007 through January 24, 2008 (the date of the hearing on T&BPS' Motion to Declare This Case Exceptional). All of the time and expenses detailed in T&BPS' fee request were necessarily incurred to prosecute T&BPS' motion for summary judgment and to respond to PDI's multiple motions. *See* Exhs. A and D to Declaration of Robert A. Angle ("Angle Dec."), (detailed billing records of Troutman Sanders LLP and Parsons Behle and Latimer).

T&BPS' fee request does **not** include time spent preparing for and taking the deposition of the inventor (John Kammeter), which occurred after the Court awarded summary judgment, or attorneys' fees that T&BPS deemed unwarranted or potentially duplicative. *See* Angle Dec. at ¶ 11. T&BPS has not included in its fee request more than $37,000.00 in fees incurred between August 13, 2007 and January 24, 2008, which is almost twenty percent (20%) of the total fees T&BPS incurred in that period. *See* Angle Dec. at ¶ 11, Exh. G. Given the multiple motions and discovery that were necessitated by PDI's litigation tactics after August 13, 2007, the number of hours claimed by T&BPS in its fee application is reasonable and appropriate.

      **B.**      **Skill Requisite to Properly Perform the Legal Service and the Experience, Reputation and Ability of the Attorneys (Johnson Factors #3 and #9)**

In addition to civil litigation skills and familiarity with federal court practice, patent cases additionally require an understanding of the many patent law issues. T&BPS was represented in this case by the Salt Lake City firm of Parsons Behle & Latimer and by Troutman Sanders LLP. As shown by the attached biographical information, the attorneys who represent T&BPS are experienced federal court and patent litigators with the knowledge necessary to litigate a case of this nature. *See* Exhs. B and E to Angle Dec. (biographical information for attorneys). T&BPS'

6

attorneys litigated this action as efficiently as they could, given the amount of discovery and motions practice created by PDI's actions.

### C. Customary Fees (Johnson Factor #5)

The total cost of this litigation was significantly less than is typically charged for similar patent suits. The 2007 American Intellectual Property Law Association Report of the Economic Survey (the "AIPLA Survey") shows the typical costs for patent infringement litigation. *See* Exh. D to Angle Dec. In 2007, the average cost of litigating a patent infringement suit where less than $1 million was at risk in the "Other East" region that includes Virginia was $436,000.00 through discovery and $645,000 through trial. *Id*. (Chart titled "Total Costs: Litigation – Patent Infringement by Location"). T&BPS' actual fees incurred in this litigation are less than this average amount incurred through discovery, and T&BPS' fee request is less than half this average cost

The hourly rates charged by Parsons Behle & Latimer and Troutman Sanders were also reasonable for a patent infringement suit. The rates for partners who worked on this case ranged from $260 per hour to $350 per hour, which is consistent with the rates charged by attorneys who practice before this Court and with the average rates for attorneys in intellectual property litigation as shown by the AIPLA Survey. *See* Angle Dec. at ¶¶ 6, 10 and Exh. C. Further, as noted in the attachments, much of the work performed by T&BPS' attorneys was performed at a discount of 10% from standard rates even before write-offs or reductions were applied. *Id*. at ¶ 5 n. 1. Finally, as stated above, T&BPS has removed approximately 20% of the fees it actually incurred from its fee request to account for the deposition of the inventor, which was taken after the Court awarded summary judgment, and for fees that were potentially unwarranted or duplicative. *Id*. at ¶ 11.

### D. Time Limitations Imposed By the Client or the Circumstances (Johnson Factor #7)

As the Court is aware, litigation in this Court moves swiftly. Once PDI chose not to take a dismissal of its infringement claims and appeal the Court's claim construction, it was necessary for T&BPS to prepare this case as if it were going to trial. Because the discovery cut-off was in early December, it was necessary for T&BPS to conduct discovery and prepare its case (including the retention of an expert witness) while its summary judgment motion was pending. Discovery was essentially complete by the time the Court granted summary judgment on November 15. In addition, T&BPS had to prosecute its summary judgment motion, which was ultimately successful, and respond to PDI's multiple motions, including PDI's own motion for summary judgment, PDI's motion for reconsideration of the Court's summary judgment decision, and PDI's motion to dismiss for lack of subject matter jurisdiction. Given the time limitations in this case, including the necessity to conclude the majority of discovery before its summary judgment was ripe for disposition, T&BPS' fee request is reasonable.

### E. Amount Involved and the Results Obtained (Johnson Factor #8)

Although PDI never provided a precise damages calculation, it sought to enjoin T&BPS from using, making or selling the accused CYBEREX BCM. The threat of a damages judgment and a permanent injunction against this product justified the effort expended and the legal fees and costs incurred in defending this action. As stated above, T&BPS' fee request is reasonable and far less than the average costs of litigation through discovery where less than $1 million is at risk, which is the lowest level of the AIPLA survey, for this area of the country. *See* Exh. C to Angle Dec. (Chart titled "Total Costs: Litigation – Patent Infringement by Location").

Moreover, T&BPS prevailed on virtually every substantive issue in this case. The Court ruled in T&BPS' favor on claim construction and T&BPS' motion for summary judgment. The Court ruled against PDI on its motion for summary judgment, its motion for reconsideration, and its motion to amend its Counterclaim. While the Court granted PDI's motions for additional time to conduct discovery and to serve expert reports, PDI's subsequent conduct has revealed that the representations it made to the Court to obtain such relief were not in good faith. Thus, the results obtained by T&BPS' attorneys merit full award of its fee request.

### F.      Awards in Similar Cases (Johnson Factor #12)

T&BPS' requested attorneys' fees and expenses are far less than have been granted in other patent cases, which range from about $2.5 million to $3.7 million. *See, e.g.*, *Synthon IP, Inc. v. Pfizer Inc.*, 484 F. Supp. 2d 437, 443 (E.D. Va. 2007) (awarding attorneys' fees and non-taxable costs of $3,207,425.27); *see also Nikko Materials USA, Inc. v. R.E. Serv. Co.*, No. 03-2549, 2006 U.S. Dist. LEXIS 3750, at *33 (N.D. Cal. Jan. 13, 2006) (awarding $3,063,396.10 in attorneys' fees and costs of $345,426.71); *Rock Bit Int'l, Inc. v. Smith Int'l, Inc.*, 82 F. Supp. 2d 677, 679 (S.D. Tex. 1999) (awarding $2,580,308.57 in attorneys' fees); *Comark Commc'ns., Inc. v. Harris Corp.*, No. 95-2123, 1998 U.S. Dist. LEXIS 4036, at *18 (E.D. Pa. Mar. 31, 1998) (awarding $3,025,859.39 in attorneys' fees and costs); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 898 F. Supp. 116, 128 (E.D. N.Y. 1995) (awarding $3,222,907.25 in attorneys' fees and $550,948.39 in disbursements). While the amount at risk in this case is not as high in those cases, T&BPS' fee request is less than half the average cost of patent litigation where less than $1 million is at risk through the discovery process for this region of the country. *See* Exh. C to Angle Dec. (Chart titled "Total Costs: Litigation – Patent Infringement by Location").

9

## II. T&BPS IS ENTITLED TO ITS REASONABLE NON-TAXABLE EXPENSES INCURRED IN THIS LITIGATION

T&BPS also seeks an award of $11,350.65 in nontaxable costs. Exhs. F and G to Angle Dec.[2] The requested expenses include costs to prepare T&BPS' documents for production, court reporter and deposition costs, necessary attorney and paralegal travel expenses, copying costs, overnight delivery costs, courier fees, and research costs.

The Federal Circuit has held that non-taxable costs are recoverable under 35 U.S.C. § 285. *Cent. Soya v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 1578 (Fed. Cir. 1983) ("The purpose of § 285 is, in a proper case and at the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution of the suit."); *Synthon IP*, 484 F. Supp. 2d at 445 ("[I]t is indeed appropriate under § 285 to compensate Pfizer for its necessary costs and expenses incurred in this 'exceptional' case."); *Maxwell v. Angel-Etts of California, Inc.*, 2002 U.S. App. LEXIS 26528 at **3 (Fed. Cir. 2002) ("We reverse and remand on the issue of non-taxable costs because our decision in [*Central Soya*] makes clear that such costs are recoverable"). Courts allow reasonable litigation expenses that include (1) photocopying charges; (2) hotel and travel expenses; (3) computer assisted legal research charges; (4) deposition costs; (5) copies of patents and patent prosecution histories; (6) courier fees; (7) trial supply expenses; (8) postage and facsimile charges; and (9) supplemental secretarial costs. *See Superior Form Builders*, 881 F. Supp. at 1029 (citing *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 623 (4th Cir. 1978); *Auto. Prods. PLC v. Tilton Eng'g, Inc.*, 855 F. Supp. 1101, 1106-07 (C.D. Cal. 1994); *Codex Corp. v. Milgo Elec. Corp.*, 541 F. Supp. 1198 (D. Mass.

---

[2] To the extent that seeing additional back up for expenses would be helpful to the Court, T&BPS will provide that additional information upon request.

1982)); *see also Synthon IP*, 484 F. Supp. 2d at 445. All of T&BPS' requested costs fit in the categories of costs recoverable under § 285.

### III. T&BPS IS ENTITLED TO POST-JUDGMENT INTEREST ON ITS ATTORNEYS' FEES

T&BPS should be awarded post-judgment interest pursuant to 28 U.S.C. § 1961(a):

> Interest shall be allowed on any money judgment in a civil case recovered in a district court …. Such interest shall be calculated from the date of the entry of the judgment.

The phrase "any money judgment" includes a judgment awarding attorneys' fees. *Mathis*, 857 F.2d at 760. Interest on an attorneys fees award "runs from the date of the judgment establishing the right to the award, not the date of the judgment establishing its quantum." *Id*.

### CONCLUSION

For the foregoing reasons, T&BPS requests that its request for an award of attorneys' fees and non-taxable costs pursuant to 35 U.S.C. § 285 be granted, and that T&BPS be awarded $188,067.75 in attorneys' fees and $11,350.65 in costs.

THOMAS & BETTS POWER SOLUTIONS, L.L.C.

By /s/
 Of Counsel

Dabney J. Carr, IV, VSB #28679
(dabney.carr@troutmansanders.com)
Robert A. Angle, VSB #37691
(robert.angle@troutmansanders.com)
TROUTMAN SANDERS LLP
P. O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1200
(804) 697-1339 (Fax)

<u>Of Counsel:</u>
David G. Mangum (admitted *pro hac vice*)
C. Kevin Speirs (admitted *pro hac vice*)
Michael R. McCarthy (admitted *pro hac vice*)
Nicole G. Farrell (admitted *pro hac vice*)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111

*Attorneys for Thomas & Betts Power Solutions, L.L.C.*

## CERTIFICATE OF SERVICE

      I certify that a true copy of the foregoing was served by hand and electronically filed with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to Thomas J. Moore, Esquire, and Felix J. D'Ambrosio, Esquire, BACON & THOMAS, PLLC, 625 Slaters Lane, Fourth Floor, Alexandria, Virginia 22314-1176, Counsel for Defendant Power Distribution, Inc., this 15th day of February, 2008.

                                   /s/  
                              Dabney J. Carr, IV, VSB #28679  
                              (dabney.carr@troutmansanders.com)  
                              Robert A. Angle, VSB #37691  
                              (robert.angle@troutmansanders.com)  
                              TROUTMAN SANDERS LLP  
                              P. O. Box 1122  
                              Richmond, Virginia  23218-1122  
                              (804) 697-1200  
                              (804) 697-1339 (Fax)

#1698324